IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-00456-MSK-OES

JOHN C. DAW, O.D. & JOHN C. DAW, O.D., P.C., a Colorado professional corporation,

Plaintiff(s),

vs.

SHOPKO STORES, INC., a Wisconsin corporation,

Defendant(s).

_____

ORDER DENYING PLAINTIFFS'
MOTION TO COMPEL, AND
GRANTING IN PART PLAINTIFFS'
PARTIALLY UNOPPOSED MOTION FOR EXTENSION OF TIME

_____

ORDER ENTERED BY MAGISTRATE JUDGE O. EDWARD SCHLATTER
Dated: August 24, 2005

## INTRODUCTION

Plaintiff John Daw is a doctor of optometry who does business as John C.

Daw, O.D.P.C. Although plaintiff has named both himself and his business as

plaintiffs, I will refer to plaintiff in the singular. Defendant Shopko sells eye glass and

contact lenses, and glass frames. As a manufacturer of lenses, Shopko is a health

care provider.

This case is presently set for a jury trial before District Judge Marcia S. Krieger

on December 12, 2005. She has also scheduled her final trial preparation

conference for November 17, 2005. The final pretrial conference to be conducted

before me is set for August 30, 2005. The discovery deadline was June 30, 2005.

Plaintiff has filed a Motion to Compel the production from defendant of certain medical records. Plaintiff has also filed a motion to extend the discovery deadlines, including the cutoff date for discovery and the designation of experts. Plaintiff asserts that the need for the extension of deadlines has been caused by the failure of defendant to provide the medical records that are sought in the Motion to Compel. Thus, plaintiff asks in his "Partially Unopposed Motion for Extension of Time" for an extension of the discovery deadlines, including the deadlines for designation of experts, and for a continuance of Judge Krieger's trial preparation conference as well as the jury trial.

I heard arguments from counsel during a hearing that I conducted on August 24, 2005. Having taken the matter under advisement, I now decline to order the production of the medical records that plaintiff seeks, and I will deny his Motion to Compel. Because plaintiff will not be receiving these medical records, he does not present the same need for extensions of deadlines. However, I will grant in part the request to amend certain of the deadlines.

## BACKGROUND

Shopko and plaintiff were in a landlord-tenant relationship that is typical for this type of medical practice and business. Shopko, as the landlord of premises that were located in a shopping mall, provided a facility to plaintiff for him to provide optometric services to patients. Shopko hoped to sell eye glasses or lenses, whether to plaintiff's patients or to customers who came to Shopko but who were not

plaintiff's patients.  Similarly, plaintiff hoped to obtain as patients persons who came

to Shopko for the purpose of obtaining corrective lenses.  While plaintiff was a tenant

of Shopko, he and Shopko solicited business from the same list of

patient/customers.  Shopko did all of plaintiff's billing, collected his fees, and issued

a check to plaintiff for the amount that had been received on his behalf.

Plaintiff terminated his relationship with Shopko, and went into practice on his

own in a separate office.  When he left, he took with him the files of approximately

3,000 patients.  He has sued Shopko for unfair competition, deceptive trade practices

and breach of contract, as well as other claims.  Among his claims, he alleges,

generally, that Shopko misappropriated his business by soliciting business from his

patients after he had terminated his relationship with Shopko.  He alleges that

Shopko engaged in this solicitation through the use of "recall cards" that were sent to

the patients/customers that were contained in its computer database.  Plaintiff

concluded that his business had been misappropriated when he determined at

some point that only about 10 percent of his patients followed him from Shopko to his

new office.

**Motion to compel.**  In his Motion to Compel, plaintiff asks the court to order

Shopko to produce the names, addresses and telephone numbers of the persons

who constitute the customer and patient base for both Shopko and the optometrists

who succeeded plaintiff, namely, doctors Sundhagen and Cottrell.  This list

apparently contains the names of  approximately 750 persons.  Plaintiff has also

asked for the production of client lists generated by Shopko, lists detailing the return visits of patients, records of optical sales, retention rates of patients or patient visits and lists that compare the names of plaintiff's patients with those of the successor doctors.

Defendant states that it has provided to plaintiff in summary form the information that plaintiff seeks. Defendant states that it has withheld from production the names and other personal information of the patients/customers. The information provided to plaintiff contains the number of customers previously seen by plaintiff who were sent recall cards by Shopko from the date on which plaintiff left Shopko to the date that Shopko discontinued this practice, and contains information in regard to sales and customer return rates. Shopko states in its Response to the Motion to Compel that plaintiff has received all of the information that Shopko provided to its expert.

Plaintiff wishes to have the information from Shopko in order to conduct a telephone survey of various of the patients whose names he receives. Counsel for plaintiff stated during the hearing of August 24th that he expected that he would retain the services of a survey company such as Gallup to conduct a telephone survey. The survey company would formulate a series of questions, and would then telephone a random selection of patients. The primary purpose for the survey would be to determine the reasons that patients did not use plaintiff as their optometrist, and to determine the roll, if any, that Shopko's actions may have played in patient decisions.

4

**DISCUSSION**

I am persuaded to deny plaintiff's Motion to Compel for a number of reasons.

First, contrary to plaintiff's arguments, I am not persuaded that HIPAA (the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320d-6(a)) does not apply to the circumstances presented here to prevent the disclosure of patient records. Plaintiff directs me to sections of HIPAA that provide that medical records may be released as part of judicial or administrative proceedings, and I agree that the court generally has the power to direct the disclosure of medical records, and to fashion appropriate measures for protection of the records.

But the granting of plaintiff's request involves more than the mere release and examination of medical records. The patient records of these 750 people are far beyond a few files that relate to particular patients whose medical histories may be at issue in a lawsuit. Plaintiff's needs for these records exceeds the usual needs for medical records, because the medical records, as such, of these people are not at issue in this lawsuit. Rather, plaintiff seeks these records in order to inquire into the decisions that the 750 patients have made with regard to their selection of an optometrist. That is, plaintiff not only wishes to examine the records of all of these persons, but he wishes as well to contact them for the purpose of learning why they are going to an optometrist other than him. The opportunities for people to be offended by this release of their medical records, and by this intrusion into their privacy interests, is manifest.

5

Second, plaintiff's need for the information does not outweigh the intrusion into privacy that would result if plaintiff's request for the records is granted. Shortly after plaintiff entered into practice on his own, he became aware that he was not enjoying the patient retention rate that he believes that he should have enjoyed after leaving Shopko. Plaintiff has had the opportunity since that period of time within which to conduct a survey of his own patients, which number approximately 3,000, but he admittedly has not done so. That survey would not present the privacy concerns that are presented by plaintiff's request to survey the patients who elected to receive optometric care from a doctor *other* than plaintiff, but such a survey, arguably, would have achieved the same goals for plaintiff as are sought with regard to the 750 persons who are *not* plaintiff's patients. Plaintiff would have been surveying his own patients, not the patients of other doctors, or patients who wished to discontinue their relationship with plaintiff, for whatever reason.

Third, plaintiff's need for this information gives rise to problems that are analogous to the problems that arise when one party wishes to contact the members of a prospective class in an intended class action. Contacts with prospective witnesses presents the risk that the survey results may be slanted, and be rendered inadmissible as evidence, by the questions that are asked, or presents the risk that the pool itself may become tainted by the questions that are posed. For that reason, a survey of the type contemplated by plaintiff should only be conducted either jointly by both parties, or under the supervision of the court.

6

Fourth, even assuming that an agreed or judicially-approved set of questions could be presented to a random sampling of patients, insufficient time remains between now and the date for trial within which to accomplish the discovery that would be pursued if I were to grant plaintiff's request for the production of the medical records. Counsel for plaintiff is confident that plaintiff's survey could be accomplished "in a very short period of time." But counsel overlooks the fact that the data from any survey must be interpreted, first by an expert for plaintiff, followed later by an expert for defendant. Arguably, defendant would need, and would be entitled, to conduct a survey of its own, giving rise to the need for another designation of experts, and another interpretation of survey data by experts. The data from these surveys would need to be reduced to expert reports, first by an expert for plaintiff, followed later by an expert for defendant.

Statistical surveys and the data obtained from such surveys are almost always the subjects of motions that are filed pursuant to <u>Daubert</u>. These types of motions take a great deal of time for counsel to draft, as well as a great deal of time to frame responses. And, finally, <u>Daubert</u> motions absolutely require judicial action. <u>Daubert</u> motions are as difficult for the court as for counsel, and cannot be resolved through a quick and dirty hearing, with a ruling from the bench. Normally, this type of motion needs to be taken under advisement, and given careful consideration. Taking all of these circumstances into consideration, I see no possible means whereby this case could proceed to trial on December 12, 2005, if I were to allow the commencement of

discovery proceedings that would ensue if I were to grant plaintiff's Motion to Compel.

Lastly, I am not persuaded that plaintiff has sought this discovery with due diligence. Plaintiff has been aware of his need for survey evidence since the date that he first determined to file a lawsuit against Shopko, but he did not file a motion to compel the production of patient lists until August 9, 2005, which was over a month beyond the cutoff date within which to conduct discovery.

**Partially unopposed motion for extension of deadlines.** Counsel for both parties indicated during the hearing of August 24, 2005, that they have been unable to schedule the depositions of two experts and defendant's Rule 30(b)(6) representative. I indicated on the record that leave would be granted to conduct those depositions.

Shopko has held off on the filing of its motion for summary judgment until after the resolution of plaintiff's Motion to Compel. Defense counsel concluded, and I agree, that the substance of plaintiff's motion reflected that plaintiff would insist upon production of the patient files before filing any response to defendant's motion. Otherwise, defense counsel stated that Shopko's motion for summary judgment is prepared, and ready to file. Plaintiff's asserted need for patient files has been eliminated as a factor by virtue of my denial of plaintiff's motion to compel.

## CONCLUSION

It is therefore ORDERED as follows:

1. Plaintiff's Motion to Compel Discovery [Doc. 64, filed August 9, 2005] is

**DENIED**.

2.  Plaintiff's Partially Unopposed Motion for Extension of Time and to Vacate and Reset Pretrial Conference and Trial Date [Doc. 63, filed August 9, 2005] is **GRANTED IN PART**.

(a) The parties are granted leave to conclude the depositions of the two experts and defendant's Rule 30(b)(6) representative by no later than October 1, 2005.

(b) The deadline for filing dispositive motions is September 6, 2005; the deadline for filing a response is October 1, 2005.

3.  All other dates and deadlines remain as previously set.

Dated at Denver this day of August 24, 2005.

BY THE COURT:


  s/O. Edward Schlatter
O. Edward Schlatter
U.S. Magistrate Judge