IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 04-cv-00456-MSK-MEH

JOHN C. DAW, O.D., and
JOHN C. DAW O.D., P.C., a Colorado Professional Corporation,

      Plaintiffs,

v.

SHOPKO STORES, INC. a Delaware corporation,

      Defendant.

---

## OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT

---

    **THIS MATTER** comes before the Court pursuant to the Plaintiffs'[1] Motion to Dismiss Claims (**# 117**), the Defendant's response (**# 118**), and the Plaintiff's reply (**# 120**); the Defendants' Motion for Leave to Submit Motion for Summary Judgment (**# 119**), the Plaintiff's response (**# 121**), and the Defendant's reply (**# 122**); the Defendant's Motion for Summary Judgment (**# 79**), the Plaintiff's response (**# 82**), and the Defendant's reply (**# 83**); and the parties' Joint Motion Pursuant to Fed. R. Evid. 702 (**# 125**).

---

[1]Although there are two Plaintiffs named in this action, John C. Daw O.D. P.C. is simply the title of John C. Daw's optometry practice.  It does not appear for purposes of this action that the two have differing claims, rights, or interests.  Thus, for simplicity in future reference, the Plaintiffs will be referred to in the singular, as Plaintiff.

# BACKGROUND

In summary, from 1999 to 2003, the Plaintiff leased space for an optometry practice on the premises of Defendant Shopko and provided optometry services to customers of Shopko under a written lease and services agreement.  When the parties terminated the agreement in 2003, the Plaintiff relocated his practice and sought to transfer a telephone number assigned to his Shopko office ("the -0534 number") to the new practice.  Shopko refused to transfer the phone number, claiming it was entitled to retain the number.  The Plaintiff contends that, since then, Shopko has improperly directed patients attempting to call the Plaintiff at the -0534 number to the optometrist currently leasing the Shopko space.  In addition, the Plaintiff contends that Shopko has provided the new optometrist with access to the Plaintiff's private patient files without the Plaintiff's permission.

In the Amended Complaint **(# 30)**, the Plaintiff asserted seven claims for relief: (i) misappropriation of his name and likeness for commercial purposes (this and all tort claims are presumably under Colorado law); (ii) unfair competition by misappropriation of business value; (iii) commission of unspecified deceptive trade practices under C.R.S. § 6-1-105; (iv) bad faith breach of contract, relating to the Shopko's refusal to release the -0534 number and patient files; (v) intentional interference with business advantage, by Shopko's solicitation of the Plaintiff's patients; (vi) misappropriation of trade secrets in violation of C.R.S. § 7-74-101; and (vii) civil conspiracy, although the identities of the conspirators and the object of the conspiracy are not specifically identified.

On September 6, 2005, the Defendant moved for summary judgment **(# 79)** on all of the Plaintiff's claims.  Specifically, the Defendant contended: (i) on the misappropriation of likeness

claim, the Plaintiff cannot establish any appropriation of the Plaintiff's name or likeness; (ii) on the unfair competition claim, the Plaintiff cannot establish that he has produced any item of commercial value that was appropriated by the Defendant; (iii) on the deceptive trade practice claim, the Plaintiff cannot establish that the Defendant engaged in any deceptive practice and cannot establish any public impact; (iv) on the  breach of contract claim, the Plaintiff cannot establish a breach of the contract; (v) on the interference with business advantage claim, the Plaintiff cannot establish that the Defendant interfered with any prospective contractual relations; (vi) on the trade secret claim, the Plaintiff cannot establish that the patient list is a trade secret; and (vii) on the civil conspiracy claim, the Plaintiff cannot establish an unlawful goal, unlawful means, or an agreement among two or more persons.  The Plaintiff's response **(# 82)** apparently abandoned[2] the bad faith breach of contract and civil conspiracy claims, as it failed to address those claims in any respect.

On November 17, 2005, the Court conducted a Final Pretrial Conference **(# 112)**.  At that time, the Court observed that the Defendant's summary judgment motion was filed too close to the scheduled trial date of December 12, 2005 to permit the Court to fully consider it, and denied the motion without prejudice to the Defendant making a motion pursuant to Fed. R. Civ. P. 50(a) at the close of the Plaintiff's case at trial.  At the same time, although not formally ruling on the summary judgment motion, the Court noted its concern with the viability of several of the Plaintiff's claims.  On December 1, 2005, the Court vacated **(# 115)** the December trial date and

---

[2]Later, the Plaintiff formally moved **(# 103)** to dismiss the breach of contract and conspiracy claims, and the Court granted that motion **(# 112)**.  The Court did not rule on the Defendant's request for and award of fees and costs relating to these claims, directing the Defendant to bring a Rule 11 motion at the conclusion of the case if it still intended to seek such relief.

reset it for October 2006.  At that time, the Court advised the parties that no leave was granted to file additional pre-trial motions, other than a motion under Fed. R. Evid. 702.

On December 20, 2005, the Plaintiff moved to withdraw **(# 117)** the interference with business advantage and statutory deceptive trade practices claims.  In response **(# 118)**, the Defendant stated that it did not oppose withdrawal of the claims, but sought fees and costs for defending the claims.

On December 23, 2005, the Defendant sought leave **(# 119)** to submit a motion for summary judgment.  The Plaintiff responded **(# 121)** in opposition, stating that the Court had denied the Defendant's earlier summary judgment motion without prejudice.

On January 19, 2006, as authorized by the Court's December 1, 2005 ruling, the parties filed a Joint Motion Under Fed. R. Evid. 702, directed at the proffered testimony of the Plaintiff's experts, Dr. Gary Gerber and Dr. Sanjay Bhagat.

## ANALYSIS

### A.  Plaintiff's motion to dismiss

The Plaintiff moves to dismiss the intentional interference with business advantage and deceptive trade practices claims.  The Defendant does not oppose dismissal, but requests costs and fees for defending the dismissed claims.  As with the Plaintiff's prior dismissal of certain claims, the Court will dismiss the claims without considering the Defendant's request at this time. Should the Defendant still intend to seek costs and fees at the conclusion of the litigation, it may make the appropriate motion at that time.

### B.  Leave to submit summary judgment motion

The Court grants in part and denies in part the Defendant's motion for leave to submit a summary judgment motion.  The motion is denied insofar as it requests leave to file any new motion.  However, the motion is granted insofar as the Court will reconsider its prior order (**#112**) denying Defendant's previously-filed summary judgment motion (**# 79**) without prejudice. The Court's denial of the Defendant's summary judgment motion reflected only that insufficient time remained before trial to permit full consideration of the motion; it was not an adjudication on the merits.  With the resetting of the trial date, the circumstances warranting that outcome have changed and there is now sufficient time for the Court to address the merits of the motion.  There is no prejudice to any party in the Court (re)considering the motion, as both parties availed themselves of the opportunity to fully brief the issues.  Accordingly, the Court will turn to the merits of the Defendant's previously-filed motion.

### C.  Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Substantive law determines what facts are material and what issues must be determined.  It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and

opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248.  When considering a summary judgment motion, a court views all evidence in the light most favorable to the nonmoving party, thereby favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. In response, the non-movant party may not simply rest on the allegations in its pleadings, but must come forward with sufficient competent evidence to *prima facie* establish the challenged claim or defense.  *See BancOklahoma Mortg. Co. v. Capital Title Corp,* 194 F.3d 1089, 1097 (10th Cir. 1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If the non-movant fails to produce sufficient competent evidence to establish a claim or defense, the claim or defense must be dismissed as a matter of law.  *Celotex*, 477 U.S. at 322-23.

### D.  Defendant's summary judgment motion

As a result of the Plaintiff's voluntary dismissal of claims, there are three claims left for which the Defendant seeks summary judgment: (i) misappropriation of likeness; (ii) unfair competition; and (iii) statutory misappropriation of trade secrets.  All are presumably brought under Colorado law.

#### 1.  Misappropriation of likeness

To state a claim for invasion of privacy based on misappropriation of name or likeness under Colorado law, the Plaintiff must prove that the Defendant: (i) used the Plaintiff's name or likeness; (ii) for the Defendant's own purposes, commercial or otherwise; (iii) the Plaintiff suffered damage as a result; and (iv) the Defendant was the cause of the Plaintiff's damages.  *Joe*

*Dickerson & Assocs. v. Dittmar*, 34 P.3d 995, 997, 1002 (Colo. 2001).  The mere mention of one's name does not constitute misappropriation unless it is accompanied by a defendant's intent to take advantage of the person's reputation, prestige, or other value.  *Id.* at 998, *citing* Restatement (Second), Torts § 652C, comment d.

The Defendant contends that the Plaintiff cannot establish the first element: that the Defendant used his name or likeness.  In response, the Plaintiff contends that, for almost two years after the parties severed their relationship, a telephone line (the "third line") used by the Defendant continued to display the Plaintiff's name on its "Caller I.D.," suggesting that phone calls placed from the third line would indicate to recipients that the call was coming from the Plaintiff, not Shopko.  In reply, the Defendant contends that there is no evidence that calls were actually placed from the third line.

The Plaintiff cites solely to the deposition of Don Bye, who is apparently the manager or an official of the Shopko store at issue.  When asked if the third line was ever used for outgoing calls, Bye responded "I'm sure it was."  *Docket* # 82, Ex. A at 17 (page 36 of the deposition).  When the timeframe of the question was clarified as to whether outgoing calls were made from the line after the Plaintiff left, Bye was more equivocal, stating "Yeah, without actually talking to the store staff, I would have to assume that those lines are randomly used . . . I have to assume that the third line was used randomly or sporadically."  *Id.*   In response, the Defendant has produced testimony by Dr. Kevin Cottrell, the optometrist who succeeded the Plaintiff at the location.  Cottrell testified that he "didn't use [that line].  I didn't memorize it.  I didn't know it.  I always used the main store number."  *Docket* # 83, Ex. A at 3 (deposition page 54).  The Defendant further contends that Cottrell testified "neither he nor the store staff made follow-up

7

phone calls to anyone from any telephone line," *Docket # 83 at 5*, but Cottrell's actual testimony

was that, after some unspecified "mailing" goes out to patients, neither he nor his staff ever

"call[ed] the patient [from any office line, including the third line] and say this is just a telephone

reminder." *Docket # 83, Ex. A at 4* (deposition pages 103-04).

Taken in the light most favorable to the Plaintiff, this evidence is sufficient – albeit just

barely – to create a genuine issue of fact as to whether calls were made from the line with the

Plaintiff's information.  Arguably, a jury could believe Bye's testimony that the line was

"randomly or sporadically used" to place calls, notwithstanding Cottrell's partially qualified

denials.  However, the Court notes that Bye's testimony itself was hedged, with Bye indicating

that his supposition was made without having consulted the "store staff" – presumably Cottrell –

to find out how the phones were actually used.  It is likely that, by the time of trial, Bye will have

consulted the staff and his trial testimony might differ from his deposition testimony, aligning itself

more closely with Cottrell's testimony, and that Cottrell's testimony may become more definitive.

Should that occur, in the absence of any other proof by the Plaintiff that the third line was actually

used to place calls to patients,[3] the Court will entertain a motion for judgment as a matter of law

---

[3]The Court has some doubt that merely proof that calls were placed to patients from the third line would be sufficient to establish the claim. As articulated by the Colorado Supreme Court, the claim appears to require some proof of intent -  that the Defendant appropriated the Plaintiff's name with the intent of capitalizing upon it. *See Joe Dickerson*, 34 P.3d at 1001 (noting that Colorado Civil Jury Instructions identify as element "the defendant sought to take advantage. . . .") (emphasis added). *See also* Restatement (Second), Torts § 652C, comment d ("It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded") (emphasis added). Thus, it would appear that additional evidence of the Defendant's intent to misappropriate the Plaintiff's name would be necessary – *e.g.* the Defendant did not properly identify itself when calling or evasively responded to questions by the recipient as to who was calling; that the Defendant was aware of the misleading Caller I.D. information and elected to disregard it; etc.

on this claim at the close of the Plaintiff's case.  Accordingly, summary judgment on this claim is denied.

### 2. Unfair competition/Misappropriation of trade secrets

The Plaintiff's response to the motion for summary judgment indicates that both of the remaining two claims are premised upon the Defendant's alleged use of the Plaintiff's patient list and/or contact information.  The Plaintiff contends that this is a trade secret that the Defendant misappropriated, and that because the customer list was generated by the Plaintiff and has business value, the Defendant's use of such material constitutes unfair competition.  The Defendant claims that it did not "misappropriate" the patient list or contact information.

A tort claim of unfair competition based on misappropriation of business value arises when one misappropriates a product of another's expenditure of labor, skill, and money.  *Smith v. TCI Communications, Inc.*, 981 P.2d 690, 694 (Colo. App. 1999); *Heller v. Lexton-Ancira Real Estate Fund, Ltd.*, 809 P.2d 1016, 1021 (Colo. App. 1990), *rev'd on other grounds*, 826 P.2d 819 (Colo. 1992) (misappropriated item must be "saleable . . . for money").

For purposes of the Plaintiff's misappropriation of trade secret claims, the term "misappropriation" is the subject of a somewhat complex statutory definition.  C.R.S. § 7-74-102(2).  As identified by the Plaintiff's citations in their response brief, the relevant definition here is that misappropriation is "disclosure or use of a trade secret of another without express or implied consent by a person who [either] used improper means[4] to acquire knowledge of the trade secret; or [a]t the time of disclosure or use, knew or had reason to know that such person's

---

[4]"Improper means" is defined as "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." C.R.S. § 7-74-102(1).

knowledge of the trade secret was [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." *See Docket* # 82 at 9-10, *citing* C.R.S. § 7-74-102(2)(b)(I), (b)(II)(B).

The Defendant's motion for summary judgment on these claims turns on the Defendant's assertion that its use of the Plaintiff's patient list and patient contact information was not a misappropriation.[5]   Rather, the Defendant contends that the Plaintiff "provided this information to Shopko for [Shopko's] own use – to market to these individuals, to bill these individuals, and to sell goods." *Docket* # 79 at 17-18.  In support of this content, the Defendant cites to the Plaintiff's deposition, in which the Plaintiff testifies generally that the Defendant was responsible for billing the Plaintiff's patients, and that the information the Defendant used was obtained from the Plaintiff via patients' intake forms.  *See Docket* # 79, Ex. B at 4 (deposition pages 159-60). The Plaintiff has testified, however, that the Defendant was authorized to use patient information solely for the purpose of billing the Plaintiff's patients and to remind patients of their appointments with the Plaintiff, and that any use of the information after the Plaintiff's departure was not authorized.  *Id*. at 4-6 (deposition pages 157-168).

Considered in the light most favorable to the Plaintiff, his testimony is sufficient to establish that the Defendant's use of the Plaintiff's patient list and contact information was a misappropriation of both an item of business value and a trade secret. There is a genuine dispute as to the scope of the authorization the Defendant had to use the Plaintiff's patient information.

---

[5]The Defendant makes a superficial argument that the patient list cannot, as a matter of law, constitute a "trade secret."  No citation for this proposition is offered, and the assertion appears to be contrary to Colorado law.  *See Network Telecommunications, Inc. v. Boor-Crepeau*, 790 P.2d 901, 903 (Colo. App. 1990) (refusing to hold as a matter of law that customer lists cannot be trade secrets).

This requires a trial on the issue of misappropriation for both the trade secrets claim under C.R.S.

§ 7-74-102(2) and the tort claim of unfair competition.

**Rule 702 motion**

The Court will conduct a Rule 702 hearing regarding the Plaintiff's experts on

**Wednesday, September 6, 2006** at **1:30 p.m.**  If the Plaintiff desires to have Dr. Gerber testify

by videoconference, such relief must be sought by separate motion showing appropriate cause.

## CONCLUSION

For the foregoing reasons, the Plaintiff' Motion to Dismiss Claims **(# 117)** is **GRANTED**

**IN PART**, insofar as the interference with business advantage and deceptive trade practices

claims are **DISMISSED**, and **DENIED IN PART**, insofar as the Court declines to rule at this

time as to whether costs and fees should be awarded.   The Defendants' Motion for Leave to

Submit Motion for Summary Judgment **(# 119)** is **GRANTED IN PART**, insofar as the Court

considers the Defendant's prior summary judgment motion on the merits, and **DENIED IN**

**PART**, insofar as the Court does not grant leave to file any new motion for summary judgment.

The Court **VACATES** that portion of its November 17, 2005 Minute Entry **(# 112)** and Order **(#**

**113)** that denies the Defendant's summary judgment motion **(# 79)** without prejudice.   The

Defendant's Motion for Summary Judgment **(# 79)** is **DENIED** on the merits.   The parties' Joint

Motion Pursuant to Fed. R. Evid. 702 (**# 125**) is **GRANTED**, insofar as the Court will hear evidence as to the admissibility of the designated opinions on **Wednesday, September 6, 2006** at **1:30 p.m.**

Dated this 26th day of June, 2006

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
United States District Judge

12